EXHIBIT 2

**PROFESSIONAL SERVICES AGREEMENT
BETWEEN
THE MARION COUNTY SHERIFF'S OFFICE
AND
WELLPATH LLC
FOR
MEDICAL SERVICES**

This Professional Service Agreement (hereinafter referred to as "Agreement"), entered into by and between **The Marion County Sheriff's Office** (hereinafter referred to as "MCSO") and **Wellpath LLC** hereinafter referred to as "Contractor"), is executed pursuant to the terms and conditions set forth herein.  Contractor shall provide services in accord with its response to the City of Indianapolis Marion County's Request RFP-335HF-234.  In consideration of those mutual undertakings and covenants, the parties agree as follows:

**SECTION I.    INTERPRETATION AND INTENT**

1.01    The "Agreement", as referred to herein, shall mean this Agreement executed by MCSO and Contractor, and shall include these Terms and Conditions, the Attachments described in Sections II and IV and attached hereto, all addenda issued prior to receipt of RFPs, quotes, or bids, whether or not receipt thereof has been acknowledged by Contractor, all conditions, plans, specifications and standards, instructions and notice to vendors, Contractor's RFP Proposal and Best and Final Offer ("BAFO"), incorporated by reference, and any written supplemental agreement or modification entered into between MCSO and Contractor, in writing, after the date of this Agreement.

1.02    This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, written or verbal, between MCSO and Contractor.  No statements, promises or agreements whatsoever, in writing or verbal, in conflict with the terms of the Agreement have been made by MCSO or Contractor which in any way modify, vary, alter, enlarge or invalidate any of the provisions and obligations herein stated.  This Agreement may be amended and modified only in writing signed by both MCSO and Contractor.

1.03    In resolving conflicts, errors, discrepancies and disputes concerning the scope of the work or services to be performed by Contractor or other rights or obligations of MCSO or Contractor the document or provision thereof expressing the greater quantity, quality or scope of service or imposing the greater obligation upon Contractor and affording the greater right or remedy to MCSO, shall govern.

1.04    Any interpretation applied to this Agreement, by the parties hereto, by an arbitrator, court of law, or by any other third party, shall not be made against MCSO solely by virtue of MCSO or MCSO's representatives having drafted all or any portion of this Agreement.

1.05    This Agreement shall include, and incorporate by reference, any provision, covenant, or condition required or provided by law or by regulation of any state or federal regulatory or funding agency.

## SECTION II.   DUTIES OF CONTRACTOR

2.01   Contractor shall provide services as specified in Attachment A, Scope of Services, attached hereto and incorporated into this Agreement.

## SECTION III.   TERM

3.01   The term of this Agreement shall begin upon execution date of this Agreement by all parties and shall terminate on February 29, 2024, unless terminated earlier in accordance with this Agreement.

3.02   This Agreement may be renewed by agreement of parties.  The term of the renewal may be less but shall not be longer than the term of the original Agreement.  A renewal shall be only by written instrument signed by both MCSO and Contractor and attached hereto as an amendment.  All other terms and conditions of the Agreement shall remain the same as set forth herein.

## SECTION IV.   COMPENSATION

4.01   Contractor proposes to furnish all labor, materials and supplies in accordance with the conditions of this Agreement necessary to complete the work as defined in Attachment A at the rates set forth in Attachment B, attached hereto and incorporated herein. However, in no event shall compensation for services, excluding the excess amounts per the CAP for services defined in Section 1.19, under this Agreement exceed Twenty Million Dollars ($20,000,000.00).

4.02   Contractor shall staff all positions as agreed to in this Contract Document according to the Staffing Matrix as defined in Attachment C.  The Contractor shall grant the MCSO a credit consisting of the fully loaded hourly rate of rate (120% of the hourly rate) for positions remaining vacant for more than thirty (30) consecutive days and not filled. A vacant position is one not filled by an employee, PRN, agency/Subcontractor or Wellpath traveling staff.   Staffing credits shall be applied to the following month's invoice.

## SECTION V.   GENERAL PROVISIONS

5.01   <u>Independent Contractor</u>.  The parties agree that Contractor is an independent contractor as that term is commonly used and is not an employee of the Consolidated City of Indianapolis and/or Marion County.  As such, Contractor is solely responsible for all taxes and none shall be withheld from the sums paid to Contractor.  Contractor acknowledges that it is not insured in any manner by MCSO for any loss of any kind whatsoever.  Contractor has no authority, express or implied, to bind or obligate MCSO in any way.

5.02   <u>Subcontracting</u>.

5.02.1  Approval required -The parties agree that Contractor shall not subcontract, assign, or delegate any portion of this Agreement or services to be performed hereunder without prior written approval of MCSO.  In the event that MCSO approves of any such subcontracting, assignment or delegation, Contractor shall remain solely responsible for managing,

directing, and paying the person or persons to whom such responsibilities or obligations are sublet, assigned or delegated. MCSO shall have no obligation whatsoever toward such persons. Contractor shall take sole responsibility for the quality and quantity of any services rendered by such persons. Any consent given in accordance with this provision shall not be construed to relieve Contractor of any responsibility for performing under this Agreement.

5.02.2 Minority, Women, Veterans, and Disability-Owned Business Enterprise Participation - To the extent Contractor uses subcontractors or other agents in the performance of services under this Agreement, Contractor shall either:

(a)    Use, at a minimum, fifteen percent (15%) Minority Business Enterprises, eight percent (8%) Women's Business Enterprises, three percent (3%) Veteran's Business Enterprises, and one percent (1%) Disability-Owned Business Enterprises in the performance of services under this Agreement; or

(b)    Demonstrate a good faith effort to achieve such percentages, in compliance with the policies and to the satisfaction of the City of Indianapolis Department of Minority & Women Business Development. See 202.403(e), Revised Code of the Consolidated City and County – Indianapolis and Marion County.

Contractor shall also comply with the requirements and be subject to the penalties for non-compliance referenced in the Consolidated City of Indianapolis and Marion County MBE/WBE/VBE/DBE Business Utilization Plan found at https://www.indy.gov/activity/certify-your-minority-women-veteran-disability-owned-business and in Article IV of Chapter 202 of the Revised Code of the Consolidated City and County which are hereby incorporated by reference into this Agreement.

Failure of Contractor to comply with this section shall constitute a breach of this Agreement.

5.03    <u>Necessary Documentation</u>.    Contractor certifies that it will furnish MCSO, if requested, any and all documentation, certification, authorization, license, permit, or registration required by the laws or rules and regulations of the City of Indianapolis, the County of Marion, other units of local government, the State of Indiana, and the United States. Contractor further certifies that it is now and will remain in good standing with such governmental agencies and that it is now and will maintain its license, permit, registration, authorization, or certification, as applicable, in force during the term of this Agreement. Failure of Contractor to comply with this paragraph shall constitute a material breach of this Agreement.

5.04     <u>Confidentiality</u>.

    5.04.1 The obligations of this section shall survive the termination of this Agreement and shall be applicable to the full extent permissible under statutes governing access to public records. Contractor understands that the information provided to it or obtained from MCSO during the performance of its services is confidential and may not, without prior written consent of MCSO, be disclosed to a person not in MCSO's employ except to employees or agents of Contractor who have a need to know in order to provide the services. Further, Contractor's work product generated during the performance of this Agreement is confidential to MCSO. The failure to comply in all material respects with this section shall be considered a material breach of this Agreement. Confidential information shall not include information, that: (a) was known by Contractor at the time it was received; (b) is, as of the time of its disclosure or thereafter becomes, part of the public domain through a source other than Contractor; (c) is made known to Contractor by a third person who does not impose any obligation of confidence on Contractor with respect to such information; (d) is required to be disclosed pursuant to governmental authority, law, regulation, duly authorized subpoena or court order whereupon Contractor shall provide notice to MCSO prior to such disclosure; or (e) information that is independently developed by Contractor without references to the confidential information.

    5.04.2 Contractor shall not, under any circumstances, release information provided to it by, or on behalf of, MCSO that is required to be kept confidential by MCSO pursuant to Indiana law except as contemplated by Section 5.04.1(d), above.

    5.04.3 Contractor acknowledges that MCSO will not treat this Agreement as confidential information and will post the Agreement on the City of Indianapolis website as required by Section 141-105 of the Revised Code of the Consolidated City of Indianapolis and Marion County. Use by the public of any document or the information contained therein shall not be considered an act of MCSO.

5.05     <u>Records; Audit</u>. Contractor shall maintain books, records, documents and other evidence directly pertinent to performance of services under this Agreement. Contractor shall make such materials available at its offices at all reasonable times during the Agreement period and for three (3) years from the date of final payment under this Agreement for inspection by MCSO or any other authorized representative of the City of Indianapolis, Marion County, Indiana. Copies thereof, if requested, shall be furnished at no cost to MCSO. Such materials shall not include Patient Safety Work Product ("PSWP"), defined as the information protected by the privilege and confidentiality protections pursuant to the Federal Patient Safety and Quality Improvement Act of 2005, 42 USC 299b-22, and Attorney Work Product.

5.06    Ownership.

    5.06.1 "Works" means works of authorship fixed in any tangible medium of expression by Contractor or its officers, employees, agents or subcontractors in the course of performing the services under this Agreement, including, but not limited to, computer programs, electronic art, computer generated art, notes, specifications, drawings, flow charts, memoranda, correspondence, records, notebooks, documentation, reports and charts, regardless of the medium in which they are fixed, and all copies thereof.

    5.06.2 All Works made or created by Contractor, either solely or jointly with MCSO, in the course of Contractor's performance of services under this Agreement shall be deemed to be works for hire and are and shall be the exclusive property of MCSO. At MCSO's request, Contractor will execute all documents reasonably required to confirm or perfect ownership of such Works and any corresponding copyright rights in and to such Works in MCSO. Without the prior written consent of MCSO, Contractor shall not use, copy or prepare derivative works of the Works, or any parts of them, other than as related to the performance of this Agreement. During the performance of this Agreement, Contractor shall be responsible for loss or damage to the Works while they are in Contractor's possession or control. Any loss or damage shall be restored at Contractor's expense. MCSO shall have free and unlimited access to the Works at all times and, upon demand, shall have the right to claim and take possession of the Works and all copies. Notwithstanding the foregoing, Contractor shall be entitled to retain a set of its work papers for archival purposes only, in accordance with applicable professional standards.

    5.06.3 Contractor shall retain all rights in and to its know-how, methods, techniques, discoveries, concepts, and ideas, whether patentable or not, and whether possessed by Contractor prior to or acquired by Contractor during the performance of this Agreement. Contractor also shall retain all rights in and to all works of authorship fixed in a tangible medium of expression which were made, created or acquired by Contractor prior to the effective date of this Agreement ("Pre-Existing Works"), provided that a listing of such Pre-Existing Works is attached to this Agreement.

5.07    Insurance.  Contractor shall, as a condition precedent to this Agreement, purchase and thereafter maintain such insurance as will protect it and MCSO from the claims set forth below which may arise out of or result from Contractor's operations under this Agreement, whether such operations be by Contractor or by its subcontractors or by anyone directly or indirectly employed by any of them, or by anyone directly for whose acts any of them may be liable:

    1) Claims under Worker's Compensation and Occupational Disease Acts, and any other employee benefits acts applicable to the performance of the work;

    2) Claims for damages because of bodily injury and personal injury, including death, and;

3) Claims for damages to property.

Contractor's insurance shall be not less than the amounts shown below:

A. Commercial General Liability (Occurrence Basis)
Bodily Injury, personal injury, property damage, Contractual liability, product/completed operations

| | |
|---|---|
| Each Occurrence Limit | $1,000,000.00 |
| Damage to Rented Premises | $100,000.00 (each occurrence) |
| Medical Expense Limit | $5,000.00 |
| Personal and Advertising Injury Limit | $500,000.00 |
| General Aggregate Limit | $2,000,000.00 (Other than Products Completed Operations) |

NOTE: GENERAL AGGREGATE TO APPLY PER PROJECT

| | |
|---|---|
| Products/Completed Operations | $1,000,000.00 |
| B.  Auto Liability | $1,000,000.00 (combined single limit) (owned, hired & non-owned) |
| C.  Excess/Umbrella Liability | $1,000,000 (each occurrence and aggregate) |
| D.  Worker's Compensation | Statutory |
| E.  Employer's Liability | |
| Bodily Injury Accident | $100,000 each accident |
| Bodily Injury by Disease | $100,000 each employee |
| Bodily Injury by Disease | $500,000 policy limit |

5.07.1  Certificates of Insurance, naming the Consolidated City of Indianapolis and Marion County as an "additional insured," (A. B. and C. only) showing such coverage then in force (but not less than the amount shown above) shall be filed with MCSO prior to commencement of any work.  The coverages afforded under the policies shall not be cancelled or not renewed until at least thirty (30) days after written notice has been given to MCSO. Upon cancellation, Contractor shall obtain a new insurance policy in accordance with Section 5.07 of this Agreement and send a copy of the new policy to MCSO.

5.07.2 With the prior approval of MCSO, Contractor may substitute different types of coverage for those specified as long as the total amount of required protection is not reduced. Contractor shall be responsible for all deductibles.

5.07.3 Nothing in the above provisions shall operate as or be construed as limiting the amount of liability of Contractor to the above enumerated amounts.

5.08    <u>Termination for Cause or Convenience</u>.

5.08.1 Either party may terminate this Agreement for any reason whatsoever with a ninety (90) day written notice provided to the other party in accordance with paragraph 5.11 of this Agreement.

5.08.2 In the event either party shall give notice to the other that such other party has materially defaulted in the performance of any of its obligations under this Agreement and such default shall not have been cured within Thirty (30) days following said notice, the party giving notice shall have the right to terminate the Agreement without further notice.

5.09    <u>Termination for Failure of Funding</u>.  Notwithstanding any other provision of this Agreement, if funds for the continued fulfillment of this Agreement by MCSO are at any time insufficient or not forthcoming through failure of any entity to appropriate funds or otherwise, then MCSO shall have the right to terminate this Agreement without penalty by giving written notice documenting the lack of funding, in which instance this Agreement shall terminate and become null and void on the last day of the fiscal period for which appropriations were received. MCSO agrees that it will make its best efforts to obtain sufficient funds, including but not limited to, requesting in its budget for each fiscal period during the term hereof sufficient funds to meet its obligations hereunder in full.

5.10    <u>Indemnification.</u>  Contractor agrees to indemnify, defend, and hold harmless the MCSO and their respective officers, agents, officials and employees for any and all third party claims, actions, causes of action, judgments and liens to the extent they arise out of any negligent or wrongful act or omission or breach of any provision of this Agreement by Contractor or any of its officers, agents, employees or subcontractors regardless of whether or not it is caused in part by the negligence of a party indemnified hereunder.

Such indemnity shall include attorney's fees and all costs and other expenses arising therefrom or incurred in connection therewith and shall not be limited by reason of the enumeration of any insurance coverage required herein.  MCSO shall not provide such indemnification to Contractor, provided, however, that Contractor shall be relieved of its indemnification obligation to the extent any injury, damage, death, or loss is attributable to the acts or omissions of MCSO.

While indemnity is not provided in favor of Contractor, MCSO and Contractor expressly agree that Contractor shall not be liable for any loss or damage proximately caused by the intentional acts, willful misconduct, or negligence of MCSO or any of their agents and employees. Contractor expressly disclaims or assumes no liability for any such loss or damage.

5.11   <u>Notice</u>. Any notice required to be sent under this Agreement shall be sent by internationally recognized overnight courier, certified mail, facsimile or other delivery method which provides confirmation of receipt and shall be directed to the persons and addresses specified below (or such other persons and/or addresses as any party may indicate by giving notice to the other party):

| To Contractor: | To MCSO: |
|---|---|
| Wellpath LLC<br>Attn: Marc Goldstone<br>3340 Perimeter Hill Drive<br>Nashville, TN 37211 | Marion County Sheriff's Office<br>Attn: Kallan Carr<br>695 Justice Way<br>Indianapolis, IN 46203 |

5.12   <u>Disputes</u>. Contractor shall carry on all work required under this Agreement and maintain the schedule for services during all disputes or disagreements with MCSO. No work shall be delayed or postponed pending resolution of any disputes or disagreements except as Contractor and MCSO may otherwise agree in writing. Should Contractor fail to continue to perform its responsibilities as regards all non-disputed work without delay, any additional costs incurred by MCSO or Contractor as a result of such failure to proceed shall be borne by Contractor, and Contractor shall make no claim against MCSO for such costs. MCSO may withhold payments on disputed items pending resolution of the dispute.

5.13   <u>Non-discrimination</u>. Contractor and its officers, agents, employees, and subcontractors shall not discriminate against any employee or applicant for employment to be employed in the performance of this Agreement, with respect to her or his hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, because of her or his race, sex, sexual orientation, gender identity, religion, color, national origin, ancestry, age, disability, or United States military service veteran status. Breach of this section shall be regarded as a material breach of this Agreement.

5.14   <u>Conflict of Interest</u>.

      5.14.1 Contractor certifies and warrants to MCSO that neither it nor any of its officers, agents, employees, or subcontractors who will participate in the performance of any services required by this Agreement has or will have any conflict of interest, direct or indirect, with MCSO.

      5.14.2 For purposes of compliance with IC 36-1-21, Contractor certifies and warrants to MCSO that Contractor, or a person who wholly or partially owns Contractor, is not a *relative*, as that term is defined by IC 36-1-21-3, of either the Mayor of Indianapolis, Indiana, or a member of the City-County Council of Indianapolis and Marion County, Indiana.

5.15   <u>Non-contingent Fees</u>. Contractor warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees. For breach or violation of this warranty MCSO shall have the right to annul this Agreement without liability or in its discretion to

deduct from the Agreement price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

5.16 <u>Force Majeure. Material Changes In Scope or Circumstances, or Emergency Circumstances</u>. If at any time during the Term of this Agreement, MCSO requests a change in the scope, volume, quality/degree or quantum of services to be provided by Contractor, or the scope of services set out herein must materially be changed as a result of any of the following, any of which would result in an increase to the cost of providing the services or which Wellpath notifies the client affects Contractor's ability to provide the requested scope of services under the circumstances (a "Material Change Circumstance"), including, but not limited to any of the following:

5.16.1 There is or are new, amended, and/or repealed law(s) or regulation(s) (including statutes, codes, Agency orders/memoranda and/or case law), or changes to MCSO's policies, procedures, practices, or circumstances, any or all of which render performance under the Agreement partially or completely impracticable or impossible under the Agreement's existing terms;

5.16.2 The United States Food and Drug Administration ("FDA") or another regulatory body approves (or issues an emergency use authorization for) a new therapy/ies or treatment modality/ies, there are changes to legal/regulatory requirements concerning the treatment of MCSO's patients, and/or changes to the applicable standard of care that materially impact the Contractor's ability to provide services and/or costs under the Agreement;

5.16.3 Contractor's performance hereunder is impacted by any event related to a Public Health Emergency (PHE) declared pursuant to Section 319 of the Public Health Service Act, a Disaster declaration pursuant to the Stafford Act (2 U.S.C. §§ 5121-5207), or any similar announcement or proclamation made by the Federal Government or any Federal Agency, any Federally recognized Native American Tribe, or any State, City/Parish or Local Government pursuant to an analogous provision of Federal or non-Federal law or rule (each, an "Emergency Circumstance").

5.16.4 the parties shall follow the procedures outlined below:

5.16.4.1    In the event of the occurrence any Material Change Circumstance, upon notice from a Party, the Parties shall meet and in good faith re-negotiate the terms of this Agreement. Neither Party shall unreasonably delay or withhold consent to such negotiations, or the proposed modifications resulting from such negotiations. In the event the Parties are not able to reach mutually acceptable changes to the Agreement after thirty (30) days, either Party may thereafter terminate the Agreement without cause upon providing ninety (90) days' notice thereafter.

5.17    <u>Applicable Laws; Forum</u>.

    5.17.1 Contractor agrees to comply with all applicable federal, state and local laws, rules, regulations or ordinances, and all provisions required thereby to be included in this Agreement are hereby incorporated by reference. This includes, but is not limited to, the Federal Civil Rights Act of 1964 and, if applicable, the Drug-Free Workplace Act of 1988.  The enactment of any state or federal statute or the promulgation of regulations thereunder after execution of this Agreement shall be reviewed by MCSO and Contractor to determine whether the provisions of the Agreement require formal modification.

    5.17.2 This Agreement shall be construed in accordance with the laws of the State of Indiana, and by all applicable Municipal Ordinance or Codes of the Consolidated City of Indianapolis, County of Marion.  Suit, if any, shall be brought in the State of Indiana, County of Marion.

5.18    <u>Waiver</u>.   MCSO's delay or inaction in pursuing its remedies set forth in this Agreement, or available by law, shall not operate as a waiver of any of MCSO's rights or remedies.

5.19    <u>Severability</u>.  If any provision of this Agreement is held to be invalid, illegal, or unenforceable by a court of competent jurisdiction, the provision shall be stricken, and all other provisions of this Agreement which can operate independently of such stricken provisions shall continue in full force and effect.

5.20    <u>Attorneys' Fees</u>.  Contractor shall be liable to MCSO for reasonable attorneys' fees incurred by MCSO in connection with the collection or attempt to collect, any damages arising from the negligent or wrongful act or omission of Contractor, pursuant to Section 5.10, or from Contractor's failure to fulfill any provisions or responsibility provided herein.

5.21    <u>Successors and Assigns</u>.  MCSO and Contractor each binds itself and its partners, successors, executors, administrators and assigns to the other party of this Agreement and to the partners, successors, executors, administrators and assigns of such other party, in respect to all covenants of this Agreement; except as otherwise provided herein, Contractor shall not assign, sublet or transfer its interest in this Agreement without the written consent of MCSO.  Nothing herein shall be construed as creating any personal liability on the part of any officer or agent of MCSO.

5.22    <u>Authority to Bind Contractor</u>.  Notwithstanding anything in this Agreement to the contrary, the signatory for Contractor represents that he/she has been duly authorized to execute agreements on behalf of Contractor and has obtained all necessary or applicable approval from the home office of Contractor to make this Agreement fully binding upon Contractor when his/her signature is affixed and accepted by MCSO.

5.23    Debarment and Suspension.

    5.23.1 Contractor certifies, by entering into this Agreement, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from or ineligible for participation in any Federal assistance program by any Federal department or agency, or by any department, agency or political subdivision of the State of Indiana. The term "principal" for purposes of this Agreement means an officer, director, owner, partner, key employee, or other person with primary management or supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of Contractor.

    5.23.2 Contractor shall provide immediate written notice to MCSO if, at any time after entering into this Agreement, Contractor learns that its certifications were erroneous when submitted, or Contractor is debarred, suspended, proposed for debarment, declared ineligible, has been included on a list or received notice of intent to include on a list created pursuant to IC 5-22-16.5, voluntarily excluded from or becomes ineligible for participation in any Federal assistance program. Any such event shall be cause for termination of this Agreement as provided herein.

    5.23.3 Contractor shall not subcontract with any party which is debarred or suspended or is otherwise excluded from or ineligible for participation in any Federal assistance programs by any Federal department or agency, or by any department, agency or political subdivision of the State of Indiana.

5.24    Compliance With E-Verify Program. By executing this Agreement, the Contractor affirms under the penalties of perjury that the Contractor does not knowingly employ an unauthorized alien. The Contractor further agrees that:

    5.24.1 The Contractor shall enroll in and verify the work eligibility status of all its newly hired employees through the E-Verify program as defined in IC § 22-5-1.7-3. The Contractor is not required to participate should the E-Verify program cease to exist. Additionally, the Contractor is not required to participate if the Contractor is self-employed and does not employ any employees.

    5.24.2 The Contractor shall not knowingly employ or contract with an unauthorized alien. The Contractor shall not retain an employee or contract with a person that the Contractor subsequently learns is an unauthorized alien.

    5.24.3 The Contractor shall require its subcontractors, who perform work under this Contract, to certify to the Contractor that the subcontractor does not knowingly employ or contract with an unauthorized alien and that the subcontractor has enrolled and is participating in the E-Verify program. The Contractor agrees to maintain this certification throughout the duration of the term of a contract with a subcontractor.

If Contractor is in violation of IC § 22-5-1.7 and fails to cure the breach within 30 days after being notified by MCSO, such circumstance may constitute a material

breach of this Agreement and MCSO may terminate this Agreement as provided by this statute.

5.25    <u>Key Persons</u>.  The parties agree that the work described in this Agreement to be performed by Contractor is a personal service, highly professional in nature, and that the identity of the individual who is to be personally responsible for such work is of prime importance to MCSO.  The parties therefore agree that in the event of the death or disability of Contractor, or, if Contractor is a firm, partnership, or corporation, in the event of the death, or disability or termination of employment of anyone understood to be personally responsible for the work described in this Agreement, MCSO may, without penalty and in its discretion, terminate this Agreement, and make its own new Agreement with any other party for completion of the work herein described.

5.26    <u>Electronic Signature</u>. Contractor and MCSO agree to signature both in counterparts and by facsimile.

5.27    <u>Post-Employment Restrictions</u>. Contractor, providing supplies, real property, or services under this Agreement, certifies to MCSO that no employee, contract employee, or sub-contractor of Contractor:

5.27.1  Participated in any way in the solicitation, negotiation, or awarding of this Agreement while previously employed by an agency of the City of Indianapolis or Marion County for a period of one (1) year prior to the execution of this Agreement;

5.27.2  For a period of one (1) year after such employee ceased supervising the administration or performance of this Agreement on behalf of an agency of the City of Indianapolis or Marion County, shall perform any functions on behalf of Contractor under this Agreement with respect to MCSO, unless the employee's former agency has consented to the employee's performance for Contractor in writing;

5.27.3  Has violated any provision of Chapter 293 of the Revised Code of the Consolidated City of Indianapolis and Marion County, regarding the solicitation, negotiation, awarding, or performance of this Agreement;

5.27.4  Is currently an official or deputy mayor of, or has appointing authority to, any agency of the City of Indianapolis or Marion County; and

5.27.5  Was previously employed by the City of Indianapolis or Marion County within one (1) year of this Agreement and currently has the performance of lobbying activity (as that term is defined in Section 909-101 of the Revised Code of the Consolidated City of Indianapolis and Marion County) related to an agency or an official as a responsibility of his or her employment or contractual relationship with Contractor.

Violation of this certification shall constitute a material breach of this Agreement and, upon such a violation, MCSO may terminate this Agreement.  In addition, upon a violation of this certification, MCSO shall report such violation to the Office

of Corporation Counsel who may, at its discretion, debar Contractor from eligibility for future MCSO and/or county purchasing, bids, contracts, and/or projects.

5.28    <u>Method of Payment</u>.  Contractor shall accept invoice payments via City/County check, or Automated Clearing House (ACH) at MCSO's sole option and discretion. MCSO will not be responsible for any bank charges incurred by the Contractor.

5.29    <u>Additional Information upon Request.</u> The Contractor shall, upon request of MCSO, make available its policies, practices and standards for the hiring of applicants, except as prohibited under Indiana Code section 22-2-17-3, to the extent such information is related to the provision of services under this Agreement.

5.30    <u>Wage Theft/Payroll Fraud.</u> The Contractor shall report, and shall require its subcontractors to report, all complaints or adverse determinations of Wage Theft or Payroll Fraud against the Contractor or its subcontractors to the City's Office of Finance and Management within thirty (30) days of notification of the complaint or adverse determination. If an adverse decision is rendered against the Contractor with respect to services provided to MCSO, MCSO may terminate this Agreement, reduce the incentives or subsidies to be provided under this Agreement, or seek other remedies.

By executing this Agreement, Contractor affirms under the penalties of perjury that Contractor has not had any adverse determinations rendered against the Contractor within the preceding three (3) years.

## ATTACHMENT A: SCOPE OF SERVICES

In accordance with the terms and conditions of the attached Professional Services Agreement (hereinafter "Agreement") by and between **The Marion County Sheriff's Office,** (hereinafter "MCSO") and **Wellpath LLC** (hereinafter "Contractor"), Contractor shall do, perform, and carry out in a good and professional manner the following services:

1.0    SCOPE OF SERVICES. Contractor shall administer health care services and related administrative services at the Adult Detention Center ("ADC") according to the terms and provisions of this Agreement.  The costs of the various health care services shall be borne by Contractor or the MCSO as set forth in this Article.

1.1    GENERAL HEALTH CARE SERVICES. Contractor will arrange and bear the cost of the following health care services:

1.1.1    INTAKE SCREENING. A timely intake screening of a Covered Person shall be performed as soon as possible after the Covered Person's arrival at the ADC for emergent or urgent health needs.  Intake screenings shall take place within 4 to 6 hours after acceptance into custody. Any arrestee whose clinical status requires urgent or emergent health services not available on site shall be referred to a local emergency room or approved hospital for care. Contractor shall have qualified healthcare personnel assigned to the Intake Area 24/7. A receiving screening shall take place as soon as possible upon acceptance into custody. At times the facility receives newly arriving inmates in large groups, making it impossible to screen each inmate immediately. In the event MCSO receives 25 or more persons for intake screenings, MCSO shall notify Contractor's Regional Director of Operations and Regional Vice President to identify additional resources to complete intake screenings.

1.1.2    HEALTH ASSESSMENT. A health assessment of a Covered Person shall be performed as soon as possible, but no later than fourteen (14) calendar days after the Inmate/Detainee's arrival at the ADC.  The health assessment shall follow current NCCHC guidelines.

1.1.3    PERIODIC HEALTH ASSESSMENT.  A health maintenance exam will be conducted for long-term patients on the anniversary of their incarceration.  Health maintenance exams shall be repeated at reasonable intervals thereafter as determined by the treating physician based on the age, gender, and health of the patient.

1.1.4    SCHEDULED SICK CALL. A qualified healthcare professional shall conduct sick calls for Covered Persons on a timely basis and in a clinical setting. A Physician Extender will be available to see Covered Persons at least once per week.

1.1.5    TELEHEALTH. When proposed by Contractor and specifically approved in writing by MCSO's Adult Detention Center Commander, certain Health services of the Professional Health services to be rendered by Contractor may be supplied remotely using Telehealth. The utilization of telehealth assets, where appropriate, may be used to fulfill certain agreed upon Staffing Matrix obligations. The appropriateness of the use of telehealth for any given patient(s) and the conditions under which it may be used shall be based upon the professional judgment of the

Contractor in conjunction with Staffing Matrix constraints. The MCSO shall not attempt to access, without authorization, any audio or visual sessions with patients that take place in a telehealth session.  The MCSO shall ensure that no other persons are present during, or have access to any information from, any such telehealth session. The MCSO shall not access (or attempt to access) telehealth sessions through any computer, internet connection, wired or wireless measures, or other methods. The Contractor shall fully comply with all laws, rules, and regulations specific to the provisions of telehealth services. Such compliance shall be in addition to Contractor's adherence to its ancillary policies and procedures, NCCHC Standards, and nursing protocols.  Telehealth shifts preapproved by MCSO's Adult Detention Center Commander will not incur a staffing penalty. Telehealth may not be employed to avoid staffing credits.  The MCSO expects Contractor to provide full F.T.E. staffing within the ADC premises at all times.

1.2     AMBULANCE SERVICE. Contractor shall arrange and bear the cost the provision or cost of any ambulance services. Costs under this Section shall be included in the Cap Amount listed in Section 1.19.

1.3     BODY CAVITY SEARCHES/COLLECTION OF PHYSICAL EVIDENCE. Contractor Health Care Staff will not perform body cavity searches, nor collect physical evidence (blood, hair, semen, saliva, etc.).

1.4     DENTAL.    Contractor shall arrange and bear the cost of the provision or cost of dental services.

1.5     ELECTIVE MEDICAL CARE - NOT COVERED. Contractor shall not be responsible for the provision or cost of any elective care. In the event a member of the ADC Population requires elective care, the Inmate/Detainee or Client shall be responsible for all costs. Elective medical care shall be defined as care which, if not provided, would not, in the sole opinion of Contractor's Chief Clinical Officer or designee, cause the Inmate/Detainee's health to deteriorate or cause harm to the Inmate/Detainee's wellbeing. Decisions concerning elective medical care shall be consistent with the applicable American Medical Association (AMA) Standards.

1.6     HOSPITALIZATION. Contractor shall arrange and bear the cost of any hospitalization services medically necessary for an Inmate/Detainee. Costs under this Section shall be included in the Cap Amount listed in Section 1.19.

1.7     MEDICAID STATE SHARE. Contractor shall adjudicate and bear the costs of the Medicaid State Share portion of hospitalization claims. Costs under this Section shall be included in the Cap Amount listed in Section 1.19.  Contractor shall meet with the MCSO quarterly to discuss this process.

1.8     LONG TERM CARE. Contractor shall not be responsible for the provision or cost of any long-term care facility services. In the event that a member of the ADC Population requires skilled care, custodial care or other services of a long-term care facility, the Client shall bear the cost.

1.9     BEHAVIORAL HEALTH CARE. Contractor shall arrange and bear the cost of on-site mental health services for Covered Persons which shall include evaluations, referrals, crisis management, suicide intervention, individual therapy, basic community linkage, and

continuity of care. Contractor shall not be responsible for the provision or cost of any off-site or inpatient mental health services. The MCSO shall be responsible for the provision and cost of off-site or inpatient mental health services for the ADC Population.

1.10    PATHOLOGY/RADIOLOGY SERVICES. Contractor shall arrange and bear the cost of professional or technical component pathology or radiology services medically necessary for an Inmate/Detainee. Costs for off-site care shall be included in the Cap Amount listed in Section 1.19.

1.11    PREGNANT COVERED PERSONS. Contractor shall arrange and bear the cost of on-site health care services for any pregnant Covered Person in accordance with NCCHC standards and this Agreement, but Company shall not arrange or bear the cost of any health care services for newborns or infants. To the extent off-site health care services are required for any pregnant Covered Person, Wellpath shall arrange and bear the cost of medically necessary off-site care for pregnant Covered Persons. Costs for off-site care shall be included in the Cap Amount listed in Section 1.19.

1.12    SPECIALTY SERVICES. Contractor shall arrange and bear the cost of Specialty Services that are medically necessary for an Inmate/Detainee. Costs under this Section shall be included in the Cap Amount listed in Section 1.19.

1.13    VISION CARE. Contractor shall arrange and bear the cost of Vision Care that are medically necessary for an Inmate/Detainee. Costs under this Section shall be included in the Cap Amount listed in Section 1.19.

1.14    OFFICE EQUIPMENT. Contractor shall not be responsible for the provision or cost of any office equipment. The Client shall be responsible for providing office equipment, such as copier, fax secure high-speed internet and phone service required for the administrative operation of the medical unit.

1.15    OFFICE SUPPLIES. Contractor shall be responsible for providing reasonable office supplies such as books, medical record folders, and forms as required for the administrative operations of the medical unit.

1.16    MEDICAL SUPPLIES/EQUIPMENT. Contractor shall provide and bear the cost of medical supplies (i.e. alcohol prep pads, syringes, etc.) and equipment (i.e. thermometers, scales, etc.) required to administer the services required by the terms of the Agreement. The MCSO shall be responsible for medical supplies/equipment unit cost greater than $2,500.

1.17    MEDICAL WASTE. Contractor shall arrange and bear the cost of removing and properly disposing of medical waste material generated while fulfilling its duties under this Agreement in accordance with applicable laws/rules.

1.18    PHARMACY SERVICES. Contractor shall provide monitoring of pharmacy usage as well as a Preferred Medication List. Contractor shall bear the cost of all prescription and non-prescription over-the-counter medications prescribed by a duly licensed Contractor Provider for a Covered Person. Costs under this Section shall be included in the Cap Amount listed in Section 1.19. Prescribing, dispensing, and administering of medication shall comply with all State and Federal laws and regulations and all medications shall be dispensed under the supervision of a duly authorized, appropriately licensed or certified Provider.

1.19    FINANCIAL LIMITATIONS.  Contractor's maximum liability for costs associated with the provision of off-site medical services, pharmacy services or other healthcare services which include, but are not limited to, the services in Paragraphs 1.2, 1.6, 1.7, 1.10, 1.11, 1.12, 1.13 and 1.18 shall be $4,000,000 in the aggregate per Contract Year, to be pro-rated for any partial contract years (the "Cap Amount").  Costs for any medical or other health services, as set forth above, which are provided to Inmates/Detainees during the Contract Year which are in excess of the Cap Amount shall be the responsibility of the Client.  When the Cap Amount for the Contract Year is reached, Contractor will continue to provide utilization management, extend all provider discounts to the Client, and pay these expenses on behalf of the Client, as long as the Client remains current with payments due under this Agreement.  Amounts paid by Contractor which are over the Cap Amount will be reconciled on a quarterly basis.

1.20    The Contractor shall implement EHR updates and systems integration with the Indiana Health Information Exchange at no cost to the MCSO.  The Contractor shall exercise all good faith and diligence in ensuring that integration with the Indiana Health Information Exchange occurs as promptly as possible. For every month that this project is not implemented due to the sole fault of the Contractor, the MCSO shall be entitled to a penalty payment of $5,000 per month.

1.21    Contractor shall deliver a complete brand new EHR platform and meet the following measures:

> Included in the pilot for Compass RX by the end of the third quarter of 2023.
> Included in the pilot for the first module of Compass by the end of the fourth quarter of 2023.
> Included in the pilot for Compass GO scheduled for the end of the second quarter of 2024.

> For every month that measures are missed due to the sole fault of the Contractor, the MCSO shall be entitled to a penalty payment of $5000.

1.22    The Contractor shall provide the MCSO with detailed billing within the facility.  Contractor shall provide a report, as attached in Attachment D, tied to each monthly bill that represents the costs of off-site claims, pharmacy detail by drug type, and on-site dialysis costs to justify the cap billing each month. For every month that the Contractor fails to provide MCSO the report, MCSO shall be entitled to a penalty payment of $5,000 per month.

1.23    The Contractor shall perform and document Histories and Physical Examinations ("H&Ps") of all patients to whom Contractor has access in a timely manner, within 14 days of booking.  For each day that H&Ps are not timely performed within 14 days, the MCSO shall be entitled to a penalty payment of $250.00 per patient, if at the sole fault of the Contractor. For any instance of an inability to move scheduled patients to the clinic for service, MCSO will be notified within 24 hours and Contractor will not incur this penalty, MCSO and the Contractor's Health Services Administrator will meet monthly to audit the patient movement and H&Ps. The MCSO and Contractor understand that circumstances from time to time will not permit the movement of scheduled inmates that is required for Contractor to perform and document H&Ps. The MCSO and Contractor do not intend for

this penalty or 14-day count to apply to any days or instances in which such movement is limited or unavailable.

1.24    MCSO representatives will notify Contractor in writing within 48 hours of their determination of a potential material performance deficiency and meet with Contractor leadership to review concerns within seven (7) business days. The Contractor will have fifteen (15) days from the date of initial notification to provide a Corrective Action Plan that addresses the identified concerns to MCSO's designee. After acceptance of the proposed Plan, including implementation and evaluation timeline, MCSO's Contract Compliance Administrator will evaluate the critical actions outlined in the Plan to determine compliance. Areas of continued non-compliance must be addressed immediately and re-evaluated within thirty (30) days of their discovery. Failure to correct identified material performance deficiencies may result in a penalty. At all times, it is understood by the parties that Contractor cannot provide services without timely and secure access to patients and Contractor shall not be penalized for non-performance based on lack of security personnel.

## ATTACHMENT B: PRICING

| | Year 1 |
|---|---|
| **Medical, Mental and Dental Services** | |
| Salaries, Wages and Benefits | $10,819,054 |
| Aggregate Cap - Pharmacy, Off-Site and On-Site Dialysis | $4,000,000 |
| On-Site Medical Expenses | $404,258 |
| Medical Malpractice | $755,464 |
| Facility & Operating Expenses | $488,425 |
| Corporate Management and Administrative Expenses | $1,639,362 |
| **Medical, Mental and Dental Services Net Total** | **$18,106,563** |
| **MAT Services** | |
| Salaries, Wages and Benefits | $740,191 |
| On-Site Medical Expenses | $18,254 |
| Medical Malpractice | $36,085 |
| Corporate Management and Administrative Expenses | $78,679 |
| **MAT Services Net Total** | **$873,208** |
| **Medicaid Navigator Services** | |
| Salaries, Wages and Benefits | $94,430 |
| **Medicaid Navigator Services Net Total** | **$94,430** |
| **Grand Total** | **$19,074,201** |

**BASE COMPENSATION**

The monthly amounts to be paid by the MCSO to Contractor under this Agreement are set forth below. Contractor shall be paid, subject to County Auditor processing, within fifteen (15) days after the month in which services have been delivered. For example, for services rendered in the month of June 2022, payment shall be made no later than July 15, 2022. In the event this Agreement should commence or terminate on a date other than the first day or last day of any calendar month, compensation to Contractor will be prorated accordingly for the shortened month.

| Contract Year 1 Cost | | |
|---|---|---|
| Year 1: March 1, 2023 – February 29, 2024 | $19,074,201 annually | $1,589,516.75 monthly |

**PER DIEM ADJUSTMENT**

The monthly payments set forth above anticipate a combined average daily inmate population of 2,400 ("ADP"). In the event the ADP fluctuates greater or lower than anticipated above, the following adjustments to the Monthly Base Amount shall be made as follows:

(1) If the ADP for any given month is less than 2,200, then Contractor shall issue a credit for each such month to MCSO calculated as follows: (2,200 - ADP) x ($1.53) x (number of days in the month). This amount will be deducted from the payment to Contractor immediately following a monthly reconciliation related to per diem adjustments, and such deduction shall specifically set forth the calculation of such deduction.

(2) If the ADP for the month exceeds 2,400, then MCSO shall issue an additional payment for each such month of ADP excess and the payments shall be calculated as follows: (ADP - 2,400) x ($1.53) x (number of days in the month). This amount will be paid separately to Contractor on or before 30 days after any monthly reconciliation related to per diem adjustments, and such payment shall specifically set forth the calculation of such payment increase.

Average daily population as stated above shall be determined from the facilities' records and calculated and adjusted as set forth in this paragraph, and shall be calculated by adding, for a given month the daily inmate population contained in the MCSO's daily status reports and dividing such sum by the number of days in the month.

The per diem adjustment is intended to cover additional costs in those instances where minor, short-term increases in the inmate population result in the higher utilization of routine supplies and services. However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions, which might prove necessary if the inmate population grows significantly and if the population increase is sustained.

## POPULATION ADJUSTMENTS

This proposal is based on an ADP of 2400 inmates. In the event the Average Daily Population (ADP) increases above 2400 for 3 consecutive months, Wellpath reserves the right to negotiate for a contract price increase to maintain the same high quality of care for the increased population.

## COSTS INCLUDED IN THE CAP

The annual aggregate cap for Pharmacy, Offsite Services, and Specialty Onsite Services for each year of the contract is $4,000,000. Wellpath acknowledges that if the actual accumulative costs of these services is more than the annual aggregate cap in any year, MCSO will pay the full amount of overage to Wellpath and if less than the annual aggregate cap in any year, Wellpath will remit the full amount of savings to the MCSO.

## ATTACHMENT C: STAFFING MATRIX

| Wellpath | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Marion County, IN** | | | | | | | | | |
| **Day Shift** | | | | | | | | | |
| POSITION | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Hrs/WK | FTE |
| Health Service Administrator | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Medical Director | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Mid-Level Provider NP/PA | 24 | 24 | 24 | 24 | 16 | | | 112 | 2.800 |
| Director of Nursing | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Asst. Director of Nursing | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| RN Nurse CQI/Accreditation | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| RN Nurse Educator/Accreditation | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| RN Charge | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 84 | 2.100 |
| RN | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 420 | 10.500 |
| LPN | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 336 | 8.400 |
| LPN - Detox | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.400 |
| Pharmacy Tech | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 84 | 2.100 |
| Discharge Planner | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Medical Records Clerk | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MA/NA/QMA/EMT | 84 | 84 | 84 | 84 | 84 | 84 | 84 | 588 | 14.700 |
| Administrative Assistant | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Psychiatrist | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Psych NP | 8 | 16 | 8 | 16 | 8 | | | 56 | 1.400 |
| Mental Health Coordinator | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Administrative Assistant - MH | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Mental Health Professional | 40 | 40 | 40 | 40 | 40 | 24 | 24 | 248 | 6.200 |
| Mental Health Technician | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Dentist | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Dental Assistant | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Substance Abuse Counselor | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| Medicaid Navigator | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MA Scheduler | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MRC Analyst | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MAT Mid-Level | 8 | | 8 | | | | | 16 | 0.400 |
| MAT RN Coordinator | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MAT MHP | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MAT Dishcarge Planner | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| MAT LPN Dosing | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 112 | 2.800 |
| MAT Substance Abuse Counselor | 8 | 8 | 8 | 8 | 8 | | | 40 | 1.000 |
| **Total Hours/FTE - Day** | | | | | | | | **3,032** | **75.800** |
| **Evening Shift** | | | | | | | | | |
| POSITION | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Hrs/WK | FTE |
| Mental Health Professional | 16 | 16 | 16 | 16 | 16 | 8 | 8 | 96 | 2.400 |
| LPN - Detox | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.400 |
| **Total Hours/FTE - Night** | | | | | | | | **152** | **3.800** |
| **Night Shift** | | | | | | | | | |
| POSITION | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Hrs/WK | FTE |
| RN Charge | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 84 | 2.100 |
| RN | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 336 | 8.400 |
| LPN | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 336 | 8.400 |
| LPN - Detox | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.400 |
| MA/NA/QMA/EMT | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 336 | 8.400 |
| Mental Health Professional | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.400 |
| **Total Hours/FTE - Night** | | | | | | | | **1,204** | **30.100** |
| **Weekly Total** | | | | | | | | | |
| **TOTAL HOURS/FTE - WEEKLY** | | | | | | | | **4,388** | **109.700** |

LR10348.0975407    4889-3267-4383v1
LR10348.0975407    4872-1662-8565v1

v. 05/11

## ATTACHMENT D: SAMPLE CAP REPORT

Marion County (IN)
Expenses Incurred vs. Aggregate Cap Amounts
01/01/2022 – 12/31/2022
February 7.8, 2023

The parties have, through their duly authorized representatives, entered into this Agreement. The parties, having read and understood the foregoing terms of this Agreement, do by their respective electronic signatures dated below agree to the terms thereof.

**CONTRACTOR**

By:    *Justin B Searle*                                    Date:    6/7/2023

Printed:    Justin Searle

Title:    President, Local Government Division

Company:  CORRECT CARE SOLUTIONS LLC


**AGENCY/DEPARTMENT**

By:    *Kerry J Forestal*                                   Date:    6/13/23

Printed:    Kerry J. Forestal

Title:    Marion County Sheriff

Agency/Department:   MARION COUNTY SHERIFF'S OFFICE


**APPROVED AS TO AVAILABILITY OF FUNDING**

By:    *Debora Hall*                                        Date:    06/15/2023

Printed:    Debora Hall

Title:    Grants Administrator on Behalf of Sarah Riordan, Controller

Agency/Department:   OFFICE OF FINANCE AND MANAGEMENT

APPROVED FOR EXECUTION BY MAYOR OR MAYOR'S DESIGNEE

By:    *Matthew Giffin*    Date:    6/15/2023

Printed:    Matthew K. Giffin

Title:    Deputy Corporation Counsel

Agency/Department:    OFFICE OF CORPORATION COUNSEL


APPROVED AS TO FORM AND LEGALITY

By:    *Rich McDermott*    Date:    6/15/23

Printed:    Rich McDermott

Title:    Deputy Chief Counsel

Agency/Department:    OFFICE OF CORPORATION COUNSEL